1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID RAY WILLIAMS,

11          Plaintiff,                    No. CIV S-04-0998 LKK PAN P

12        v.

13   C. FERGUSON, et al.,

14          Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Plaintiff claims that defendants violated his right to free exercise of his

18   Muslim religion by issuing disciplinary actions against him for his refusal to shave his beard.[1]

19   _____

20          [1]  The Civil Rights Act under which this action was filed provides as follows:

21              Every person who, under color of [state law] . . . subjects, or causes
                to be subjected, any citizen of the United States . . . to the
                deprivation of any rights, privileges, or immunities secured by the

22              Constitution and laws, shall be liable to the party injured in an
                action at law, suit in equity, or other proper proceeding for redress.

23

24   42 U.S.C. § 1983.  Plaintiff's complaint does not specify which provision of "the Constitution
     and laws" his § 1983 claim is grounded in, although his inmate appeal, which is appended as an

25   exhibit to the complaint, grounds the claim in the First Amendment.  Defendants are entitled to
     summary judgment on plaintiff's First Amendment claim.  See Friedman v. Arizona, 912 F.2d

26   328 (9th Cir. 1990) (Arizona prison regulation prohibiting facial hair did not violate First

1    Plaintiff seeks money damages.[2]  This matter is before the court on defendants' motion for

2    summary judgment.

3                 SUMMARY JUDGMENT STANDARDS UNDER RULE 56

4        Summary judgment is appropriate when it is demonstrated that there exists "no

5    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6    matter of law."  Fed. R. Civ. P. 56(c).

7        Under summary judgment practice, the moving party

8          always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
9          pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
10          demonstrate the absence of a genuine issue of material fact.

11    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

12    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14    to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

15    after adequate time for discovery and upon motion, against a party who fails to make a showing

16

17    Amendment free exercise rights of Orthodox Jewish inmates; see also Henderson v. Terhune,
379 F.3d 709, 713 (9th Cir. 2004) (California Department of Corrections hair-length regulations
18    do not violate First Amendment).

19        Defendants have moved for summary judgment in this action on the grounds that the
events complained of did not violate plaintiff's rights under either the First Amendment or the
20    Religious Land Use and Institutionalized Persons Act, 42 U.S.C.A. § 2000cc-1 (RLUIPA).  The
RLUIPA claim is therefore properly before the court.  See Fed. R. Civ. P. 15(b); see also Cabrera
21    v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998) (failure "formally to plead" a
particular claim does not preclude court from consideration thereof where parties have expressly
22    or impliedly consented to litigation of such claim).

23        [2]  Plaintiff also seeks a court-ordered apology from defendants and a requirement that
defendants in the future do "thorough investigations" before subjecting other inmates to the
24    conditions complained of herein.  (Complaint, filed May 24, 2004, at 3.)  To the extent that either
of these prayers could be construed as a request for injunctive relief, they are moot.  The
25    undisputed facts show that defendants have acknowledged that plaintiff is a practicing Muslim
and have removed the disciplinary convictions plaintiff suffered under the grooming regulations
26    from his central file.  Neither a court-ordered apology from defendants, nor required investigation
into claims of other inmates, is appropriate relief for plaintiff in this § 1983 action.

1  sufficient to establish the existence of an element essential to that party's case, and on which that

2  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

3  concerning an essential element of the nonmoving party's case necessarily renders all other facts

4  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

5  whatever is before the district court demonstrates that the standard for entry of summary

6  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

7          If the moving party meets its initial responsibility, the burden then shifts to the

8  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10  establish the existence of this factual dispute, the opposing party may not rely upon the

11  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12  form of affidavits, and/or admissible discovery material, in support of its contention that the

13  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

14  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

15  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

16  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

17  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

18  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

19  1436 (9th Cir. 1987).

20          In the endeavor to establish the existence of a factual dispute, the opposing party

21  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

22  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

23  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

24  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

25  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

26  committee's note on 1963 amendments).

1    In resolving the summary judgment motion, the court examines the pleadings,
2    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
3    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
4    477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
5    court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
6    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
7    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
8    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
9    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
10   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
11   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
12   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

13   On August 20, 2004, the court advised plaintiff of the requirements for opposing a
14   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
15   F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.
16   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

17                                          ANALYSIS

18   I.  Facts[3]

19   At all times relevant to this action plaintiff has been a prisoner at California State
20   Prison-Solano (CSP-Solano).  At the time of the events complained of, defendants Ferguson and
21   Young were Correctional Sergeants and defendant Fish was a Correctional Lieutenant at the
22   same prison.  Plaintiff is a practicing Muslim and, as such, he wears a short beard.

23   At the time of the events giving rise to this action, the CDCR grooming standards
24   required that all male inmates be clean shaven.  However, pursuant to a preliminary injunction

25

26   [3] Except as otherwise noted, these facts are not in dispute.

1   issued in <u>Mayweathers v. Terhune</u>, Case No. CIV S-96-1582 LKK JFM P, CSP-Solano had

2   created an exemption for Muslim inmates, permitting Muslims to grow beards not exceeding

3   one-half inch in length.  (Defendants' Statement of Undisputed Facts in Support of Motion for

4   Summary Judgment (DUF), filed November 14, 2005, ¶ 5.)  In order to be included in this

5   exemption, inmates were required to provide proof of being Muslim.  (<u>Id</u>. at ¶ 8.)  Evidence

6   could include the inmate's movement passes to attend Friday prayer services, a chrono from the

7   Muslim Chaplin identifying the inmate as a Muslim, or inclusion of the inmate's name on the list

8   of Muslim inmates maintained by faculty staff.  (<u>Id</u>. at ¶ 9.)

9            On May 19, 2003, defendant Ferguson issued to plaintiff a rules violation report

10  (CDC-115) for wearing a beard in violation of the grooming standards.  (Exhibit A to DUF, at

11  12-13.)  Defendant Ferguson noted on the report that plaintiff claimed to be Muslim, but that his

12  name did not appear on the list of Muslim inmates.  (<u>Id</u>.)

13           The disciplinary hearing for plaintiff's rules violation report was held on June 6,

14  2003.  Defendant Young was the hearing officer.  (<u>Id</u>.)  At this hearing, plaintiff denied the

15  charge and stated again that he was a Muslim.  (<u>Id</u>.)  The only evidence he offered that he was a

16  Muslim was his own statement.  (<u>Id</u>.)  Defendant Young found plaintiff guilty of the violation

17  and assessed plaintiff with twenty hours of extra duty and thirty days loss of night yard and

18  telephone privileges.  (DUF ¶ 11.)

19           On June 27, 2003, plaintiff received a second rule violation report (CDC-115) for

20  failing to complete the extra duty ordered in his disciplinary hearing.  (<u>Id</u>. at ¶ 12.)  On July 1,

21  2003 plaintiff filed an administrative appeal challenging the disciplinary actions.  (Id. at ¶ 14.)

22           The disciplinary hearing for plaintiff's second rules violation report was held on

23  July 6, 2003.  Defendant Fish was the hearing officer.  (Id. at ¶ 13.)  At this hearing, plaintiff

24  stated that he did not complete the additional hours of duty because he was a Muslim, and that he

25  felt he should not be disciplined for this because he had filed the administrative appeal

26  challenging the disciplinary actions.  Defendant Fish found plaintiff guilty of failing to complete

1  extra duty and assessed plaintiff with a credit loss of thirty days and sixty days loss of night yard,

2  day room, and telephone privileges.  (Id.)

3           On August 6, 2003 plaintiff's appeal was denied at the first formal level.  The

4  denial was based on the facts that the Muslim sponsor and inmate Muslim clerks did not

5  recognize plaintiff as being a member of the Muslim community, attendance sheets for Muslim

6  services did not include plaintiff's name, and plaintiff's social factors sheet containing

7  information plaintiff provided to his counselor upon arrival at CSP-Solano denoted "none" in the

8  religion section.  (Exhibit A to DUF, at 18.)

9           On September 1, 2003 plaintiff pursued his appeal to the second formal level and

10  attached movement passes for attendance at Juma'ah prayer services, dated from July 11, 2003

11  through August 8, 2003, as evidence that he was a Muslim.  (DUF ¶ 15.)  On his second appeal,

12  plaintiff indicated that two Muslim communities existed at CSP-Solano and that the Muslim

13  chaplain, Imam Nasir should be contacted regarding his status as a Muslim inmate.  Chaplain

14  Nasir verified that plaintiff had been a Muslim for a long time and that plaintiff should not have

15  received the disciplinary actions.  (Exhibit A to DUF, at 6-7.)

16           On September 18, 2003, the CSP-Solano Warden granted plaintiff's appeal

17  requesting removal of the two disciplinary actions, but denied plaintiff's request for a formal

18  apology from the staff.  (Id.)  On September 22, 2003, plaintiff received a modification order

19  dismissing both CDC-115 disciplinary actions from his record.  (Id. at 5.)

20  II.  Defendants' Motion

21           Defendants seek summary judgment on the grounds that (1) they did not violate

22  plaintiff's rights under RLUIPA by enforcing the grooming regulations against plaintiff in the

23  absence of any evidence that plaintiff was a practicing Muslim other than plaintiff's own

24  statement; and (2) they are entitled to qualified immunity from plaintiff's claim.

25           With respect to defendants' first contention, the United States Supreme Court has

26  stated that "prison officials may appropriately question whether a prisoner's religiosity, asserted

1   as the basis for a requested accommodation, is authentic." <u>Cutter v. Wilkinson</u>, 544 U.S. 709,

2   725 (2005).  The undisputed evidence shows that at the time defendant Ferguson charged

3   plaintiff with violating the grooming regulations he noted that plaintiff's name was not on CSP-

4   Solano's list of Muslim inmates.  That finding was included in the rules violation report and

5   provided support for defendant Young's guilty finding.  Defendant Fish found plaintiff guilty of

6   failing to complete the discipline imposed following the first disciplinary conviction.  Plaintiff's

7   administrative appeal from both disciplinary charges was filed after he was convicted in the first

8   disciplinary proceeding and after he was charged, but before he was found guilty, in the second

9   proceeding.

10          The response to plaintiff's first level appeal shows that at that level of review a

11  correctional lieutenant interviewed plaintiff to give him an opportunity to, <u>inter alia</u>, provide

12  information and documentation in support of his appeal.  (Ex. A to DUF, at 18.) During the

13  interview, plaintiff told the correctional lieutenant he had been part of the Muslim community at

14  CSP-Solano since his arrival, and for two years before his incarceration.  (<u>Id</u>.)  Further

15  investigation by prison officials resulted in a report from the Muslim sponsor and the inmate

16  clerks for the Muslim chaplain that neither recognized plaintiff "as being a part of the Muslim

17  Community."  (Ex. A to DUF, at 18.)  In addition, a review of plaintiff's "Social Factors" sheet

18  which plaintiff had provided to his counselor when he arrived at a CDC Reception Center in

19  April 2003, showed that plaintiff had indicated "NONE" in the section for religious affiliation.

20  (<u>Id</u>.)  At the second level of review, further evidence showed that plaintiff had attended Jumah

21  prayer services during July 2003 and August 2003, after the disciplinary conviction, and that

22  another Muslim chaplain verified plaintiff's status as a practicing Muslim.  On that basis, the two

23  disciplinary convictions were set aside.

24          In view of the foregoing, this court finds that defendants did not violate plaintiff's

25  rights under RLUIPA in connection with the events complained of.  The record shows no more

26  than "appropriate questioning" by prison officials of the authenticity of plaintiff's claim to be a

1  practicing Muslim.  Defendants are therefore entitled to summary judgment on the claim that

2  defendants violated plaintiff's rights under RLUIPA.

3         "[G]overnment officials performing discretionary functions generally are shielded

4  from liability for civil damages insofar as their conduct does not violate clearly established

5  statutory or constitutional rights of which a reasonable person would have known."  Harlow v.

6  Fitzgerald, 457 U.S. 800, 818 (1982).  When undertaking a qualified immunity analysis, the

7  threshold question is,

8               [t]aken in the light most favorable to the party asserting the injury,
               do the facts alleged show the officer's conduct violated a [federal]
9               right?  This must be the initial inquiry....If no [right protected by
               federal law] would have been violated were the allegations
10              established, there is no necessity for further inquiries concerning
               qualified immunity.

11

12  Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194, 121

13  S.Ct. 2151, 2156 (1992)).

14         For the reasons set forth above, the facts do not establish a violation of plaintiff's

15  rights under federal law.  A fortiori, "there is no necessity for further inquiries concerning

16  qualified immunity."  Jeffers, id.

17         For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

18  defendants' November 14, 2005 motion for summary judgment be granted.

19         These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised

24  /////

25  /////

26  /////

8

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  August 28, 2006.

4

5

6   UNITED STATES MAGISTRATE JUDGE

7   17/12

8   will0998.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26